In the Matter of the ESTATE of Eugene Howard NEWMAN, Incompetent, Kenneth Friedrich, Incompetent, Dorothy Ann Twenter, Incompetent.

Nos. Wd 31005–31007.

Missouri Court of Appeals, Western District.

Sept. 2, 1980.

Robert B. Hector, Edward M. Berg, Mid–Missouri Legal Services Corp., Columbia, for appellant.

John Ashcroft, Atty. Gen., Reginald H. Turnbull, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

SHANGLER, Judge.

The probate court sustained the petitions of the guardians that the three wards–Newman, Friedrich and Twenter–previously adjudicated incompetent, displayed symptoms of mental retardation and that the guardians have authority to request placement of the wards in the Marshall State School and Hospital.[1] The probate court treated the petitions as adversary probate proceedings [§ 472.140] and appointed counsel for the wards. The wards appeal from the order to sustain the petitions.

The probate court conceived that an issue on the petitions for placement at the public mental retardation facility under [then] § 202.187.1(3) was whether the Marshall facility was the least restrictive environment for the purpose,[2] and delineated that

---

[1]. The three Newman, a twenty -five year old male; Friedrich, a twenty -seven year old male; and Twenter, a twenty–eight year old female - had been residents at the Marshall institution for at least twelve years. There is no explanation why the formal proceeding for placement to the mental retardation facility was undertaken at that late time, other than as a felt caution by the Marshall State School and Hospital to comply with the technical requirements of § 202.187.1(3) [since superseded] which took effect on January 2, 1979.

Section 202.187.1(3) then provided:

"1. The head of a public mental retardation facility . . . shall . . . admit . . for diagnosis, evaluation, treatment, education, habilitation or residential care:

(3) Any person who has been declared incompetent by a court of competent jurisdiction who has symptoms of mental retardation or developmental disabilities and for whom, in the opinion of the head of the facility or his designee, admission is appropriate; provided, however, that the guardian of such person must first obtain an order authorizing such admission from the court which currently has jurisdiction over the guardian and his ward."

[2]. The letter of advice from the probate court to the parties and the counsel cites § 202.010(26) as the source for that requirement of proof. That subsection defines "psychologist." Section 202.010 defines the meaning of terms for the context of Department of Mental Health

the petitioners prove that and other elements of the petition by clear, cogent and convincing evidence. The court required also that the Marshall facility, as actual custodians of the wards, join the proceedings as an interested party.

The petitions of the guardians were sustained on evidence of the records of the Marshall facility. The parties stipulated to treat those entries as business records. The wards moved for a physical and mental examination under Rule 60.01(a), but were denied. A separate motion for a mental and physical examination by an independent physician under § 202.140(2) was also denied the wards. The appeal contends these orders were erroneous and that, in any event, evidence of mental retardation for institutional placement from medical records alone—without opportunity to confront and cross—examine the witness—does not amount to a clear, cogent and convincing proof. In this perspective [the argument goes] the refusal of a separate examination as an independent source of evidence on the physical and mental conditions of the wards constitutes a denial of fundamental fairness. These contentions proceed on the premise that the controversy on a petition under § 202.187.1(3) for placement of a mentally retarded incompetent in a public facility involves not only the condition of mental and physical infirmity, but also that the place of facility be the least restrictive alternative.

The contentions misconceive the nature of a petition under § 202.187.1(3). That proceeding adjudicates merely that an incompetent ward displays symptoms of mental retardation or developmental disability and authorizes the guardian to request the head of a public retardation facility that the ward be placed for habilitation, residential care, or other remedial purpose. The matters to be proved are a condition of mental retardation or developmental disability of a person previously adjudicated incompetent. The question of care and treatment in the least restrictive environment appropriate and available is not a concern in that proceeding. The placement of the ward is—in the first instance—an administrative function of "the head of the public mental retardation facility or his designee" [§ 202.187.1]. The administrative duty is to ensure that each patient receives care and treatment in the least restrictive environment reasonably available. [§ 202.-190(1)]. It is only when [in these instances] the guardian does not consent to the placement that the suitability of the locus as a "least restrictive environment" comes into contention. In that event, the guardian has access to an administrative review of the agency decision for placement and, eventually, a judicial review. § 202.193. It is only on judicial review of the administrative placement decision that a court adjudicates the issue of least restrictive environment alternative.

The petitions to authorize the guardians to request placement of the wards in the Marshall facility were adjudicated by a court of competent jurisdiction—the probate court which formally determined each ward to be incompetent. There is no dispute as to that element of proof under § 202.187.-1(3). Nor does the evidence controvert the developmental disability of the wards. They have been residents at the Marshall facility for at least twelve years, each a victim of profound mental retardation.[3]

---

and State Hospitals Chapter 202. A definition of "least restrictive environment" appears in § 202.010(9), but has no function in the admissions procedure [voluntary or judicial] provision of [then] § 202.187, but only in the *administrative placement procedure* of [then] § 202.-193.

**3.** The medical entries of the Marshall facility records received in evidence show:

The ward Newman, resident at the institution for fourteen years has a mental age of one-

and a–half years and an intelligence quotient of nine. He suffers from rheumatic fever, congestive heart failure and epilepsy. He can walk but cannot speak other than to say "dad" and "can't spend money." He cannot eat, dress or groom unaided. His guardian [and father] was pleased with the placement and knew of no other facility where the ward could reside and be trained.

The ward Friedrich, resident at the institution for sixteen years, is nonverbal and generally unaware of his environment, and so cannot be

That condition of debility, to all effect, was not an issue of controversy. The motions for physical examinations of the wards under discovery Rule 60.01(a) and under § 202.140(2)[4] did not address that contention, but sought to derive a source of proof other than the institutional records as to whether the Marshall facility was the least restrictive environment alternative–an issue altogether irrelevant to the proceedings. The denial of the motions deprived the wards of no fairness of procedure or right of proof.

Thus, the essential elements of a proceeding under § 202.187.1(3)–an adjudication of incompetency by a court with jurisdiction and subsequent symptoms of mental retardation in the incompetents–were never disputed in the probate court and not in actual contention on appeal. The prescription for proof of the petition by clear, cogent and convincing evidence[5] was an innovation of the court and not a requirement of statute or principle. The elements of the petition–adjudication of incompetency of the wards and their condition of mental retardation–were never doubted, so the quantum of proof also became irrelevant.[6]

The judgment is affirmed.

All concur.

---

tested for intelligence. He chokes when he feeds himself, needs help with toiletry, and does not dress himself. He suffers from microcephaly and grand mal seizures. He is not yet ready for a less restrictive living area.

The ward Twenter, resident at the institution for twelve years, has a mental age of one year and two months. She suffers from spastic quadriplegia, grand mal seizures and contractured bones and joints. These deformities render her nonambulatory. She has no self–help or communication ability and is totally dependent for all her needs. She neither walks nor talks. Each guardian testified that the placement at Marshall was the most appropriate for the ward.

4. That section, comprehended within Chapter 202 Department of Mental Health and State Hospitals relates to the right of one mentally ill, and involuntarily detained or committed on account of a propensity to do serious physical harm to himself or others. On request, the court must appoint an available physician to examine and testify on behalf of the detainee. That procedure does not apply to a § 202.187.-1(3) petition. Mental retardation is excluded from the definition of mental illness by § 202.-010(16). Also, the proceeding by a guardian on behalf of a ward under § 202.187.1(3) is voluntary.

5. The court apparently drew that conclusion by analogy to those sections of Chapter 202 which impose a clear, cogent and convincing burden to prove that as a result of mental illness a person presents a likelihood of serious harm to himself or others and so needs continued involuntary detention in a mental health facility.

6. The formal contentions of appellants' briefs contend, variously, that refusal by the court to allow them independent medical and physical examinations under relevant court rule and irrelevant provision of statute denied them proof [other than from institution records], not only on the question of least restrictive environment placement–an inquiry beyond the scope of proceedings–but also to defend against the issue of the mental retardation of the wards. These formal contentions notwithstanding, the Rule 60.01(a) Motions for Physical and Mental Examination recite clearly that "the requested examinations are necessary to determine the least restrictive alternative for placement of the ward[s]." Moreover, the subsequent request for such an examination under [irrelevant] § 202.140 made to the probate court at the outset of proceedings was explained by counsel to enable the defense to counter the proof by the guardians that Marshall was "the least restrictive environment"–a proof the parties mistakenly assumed necessary to sustain the petition. The tenor of the record shows clearly that the condition of mental retardation–as such–simply was not a matter of dispute on the petitions.